UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNION SECURITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 5:17-CV-228-REW |
| v. | ) ) | OPINION AND ORDER |
| TIMOTHY HOCKENSMITH, et al., | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Union Security Insurance Company (Union Security) moves for an award of "$20,534.50 in fees incurred by [it] in the defense of the unmeritorious counterclaims and multiple motions filed by Defendants Timothy and Margarita Hockensmith." DE #92 (Motion). The Hockensmiths opposed. DE #94 (Response). Union Security replied. DE #95 (Reply). The matter is ripe for consideration.

The Court "has discretion to award costs and counsel fees to the stakeholder in an interpleader action . . . whenever it is fair and equitable to do so." *Holmes v. Artists Rights Enforcement Corp.*, 148 F. App'x 252, 259 (6th Cir. 2005). Indeed, awarding reasonable attorney fees to "a disinterested 'mere stakeholder' plaintiff" is the "general rule" under federal law. *See Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 793 (M.D. Tenn. 2001). "An interpleading party is entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Holmes*, 148 F. App'x at 259; *see also First Trust Corp. v. Bryant*, 410 F.3d 842, 855-56

1

(6th Cir. 2005) (permitting attorney fee awards in interpleader cases under "the traditional equity rule"); *Mutual Life Ins. Co. of N.Y. v. Bondurant*, 27 F.2d 464, 465 (6th Cir. 1928).[1] "The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate." *Holmes*, 148 F. App'x at 259 (affirming, under an abuse of discretion standard, an attorney fee award when the disinterested stakeholder "had no choice" to incur fees based on claimants' litigation decisions and "was forced to incur attorneys' fees and costs in order to extricate itself from the litigation"); *see also Great Am. Life Ins. Co. v. Dixon*, 20 F. Supp. 3d 613, 619 (S.D. Ohio 2014) (characterizing *Holmes* as expressing the Circuit's "encouragement to allow insurance companies to deduct their attorneys' fees and expenses from the proceeds when equitable").[2]

Exercising the equitable discretion inherent in this inquiry, courts have fashioned "three separate theories" for potentially excluding insurance companies from an attorney fee award. *See Kelling*, 170 F. Supp. 2d at 794. "First, courts have found . . . that insurance companies should not be compensated merely because conflicting claims to

---

[1] Perhaps the textual basis for attorney fee awards in interpleader actions is "a slender reed," *Bryant*, 410 F.3d at 856 n.11, but courts regularly permit (and the Circuit has affirmed the availability of) such awards. The Hockensmiths do not litigate this discrete issue.

[2] In the underlying motion, Union Security briefly mentioned a potential ERISA basis for a fee award. *See* DE #92, at 2. The cited statute, 29 U.S.C. § 1132(g), permits the Court "in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." The focus on this statute grew as the briefing progressed. *See* DE ##94, at 5-8; 95, at 6-8. The Court, on full consideration, declines to explore an ERISA theory at length. An interpleader-based analysis suffices to resolve the motion, and even assuming (without deciding) that § 1132(g) could provide an independent basis for an attorney fee award in this scenario, the inquiry—also grounded in the Court's discretion and, as an overarching matter, probing reasonableness and equity—would likely end in a result substantially similar to (and certainly one not more advantageous to Union Security than) the one the Court otherwise reaches. *See, e.g.*, *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).

proceeds have arisen during the normal course of business." *Id.* Second, "courts have exempted insurance companies from the general rule . . . because [they], by definition, are interested stakeholders; filing the interpleader action immunizes the company from further liability under the contested policy." *Id.* Third, "some courts have exempted insurance companies from the general rule based on the policy argument that such an award would senselessly deplete the fund that is the subject of preservation through interpleader." *Id.* at 795.

Union Security undoubtedly meets, on this record, the *Holmes* test. It is a disinterested stakeholder, *see* DE #91, at ¶ 2, who conceded liability, *see* DE #1, at 6-7, deposited the disputed funds, *see* DE #21, and sought discharge, *see* DE ##1, at 7; 91, at ¶ 2. "Regardless of the legitimacy of any of the . . . competing claims, [Union Security] would still potentially [have been] subject to multiple lawsuits if [it] had made a decision to award benefits to only one of the claimants." *Kelling*, 170 F. Supp. 2d at 794. Union Security "clearly had no interest in which of the competing claimants received the fund paid into the Court. [It] made no claim to the policy and did not dispute the amount of the policy. By submitting the fund to this Court, [Union Security] preserved it for the benefit of the successful claimant." *Id.* Union Security, thus, *qualifies* for a potential attorney fee award. The question then becomes whether the Court *should*, under the applicable standard, grant an award.

Understanding the full case history is essential for this inquiry. Despite Union Security's status as a disinterested stakeholder, the Hockensmiths levied a counterclaim against it. *See* DE #10, at 3-5. The *same day* as filing an Answer, the Hockensmiths filed a dispositive motion (labeled "Motion for Judgment on the Pleadings, or in the

Alternative, Summary Judgment"). *See* DE #11. Union Security was, thus, immediately forced to defend its interests. *See* DE ##17 (Motion to Dismiss Counterclaim), 18 (Response in opposition to DE #11), 27 (Reply in support of motion to dismiss counterclaim). The Hockensmiths, soon thereafter, moved for leave to amend the counterclaim. *See* DE #24. This necessitated more litigation by Union Security. *See* DE #28 (Response in opposition to DE #24). The Hockensmiths persisted. Just days afterward, they filed a separate "Motion to Dismiss Interpleader." *See* DE #30. This too, following the trend, required Union Security to affirmatively defend. *See* DE #31 (Response in opposition to DE #30). Judge Reeves, ultimately, rejected the Hockensmiths' positions in *every one* of these filings. *See* DE #36 (Order denying DE #11, granting DE #17, denying DE #24, and denying DE #30).

The case progressed, with Union Security's efforts primarily shifted toward securing proper service on certain foreign defendants. *See also* DE #95, at 5 (explaining the strategy). Union Security ultimately (and reasonably) moved to serve two defendants through alternative means. *See* DE #65. The Hockensmiths made the litigation choice to *oppose* this motion. *See* DE #66 (Response). This necessitated a lengthy, substantive reply in support of the motion. *See* DE #68. The Court ultimately granted the motion, rejecting (as above) the Hockensmiths' arguments. *See* DE #74 (Order).

In the meantime, however, the Hockensmiths filed yet *another* dispositive motion. *See* DE #67 ("Motion to Dismiss, Motion for Summary Judgment, and Supporting Memorandum of Law"). To be sure, Judge Boom had permitted the Hockensmiths to file "a dispositive motion," DE #63, at ¶ 3, but DE #67 improperly sought, in part, to relitigate the propriety of interpleader, an issue Judge Reeves decided previously. This

decision forced Union Security to file an extensive (but targeted) response, *see generally* DE #70; *see also id.* at 1 n.1, and, later, an additional document, *see* DE #90. The Court, in a result mirroring the case history, eventually denied the improperly repetitive portion of DE #67. *See* DE #91, at ¶ 3.

Return to the *Kelling* theories: First, the fee award Union Security seeks is not based on actions taken within "the normal course of business." *See Kelling*, 170 F. Supp. 2d at 794. To the contrary, the fees sought arise from the Hockensmiths' repetitive, unnecessary, and manifold filings. Union Security explicitly is *not* seeking fees that arose in the normal course of litigating an interpleader case. The unusual fees incurred due solely to the Hockensmiths' litigation decisions are not, in the Court's view, "simply part of doing business." *See Am. Gen. Life Ins. Co. v. Estate of Cook*, No. 3:08-CV-204-R, 2009 WL 2447937, at *1 (W.D. Ky. Aug. 7, 2009). Costs associated with defending against an onslaught of unwarranted motions and imprudent counterclaims are not costs "Plaintiff can reasonably expect to incur" in this context. *See id.* These circumstances, unlike those in, *e.g.*, *N.Y. Life Ins. Co. v. Terry*, do "tip the equitable scales" and justify an attorney fee award. *See* No. 5:15-CV-353-HAI, 2017 WL 102965, at *6 (E.D. Ky. Jan. 10, 2017).

Second, "courts have exempted insurance companies from the general rule . . . because [they], by definition, are interested stakeholders; filing the interpleader action immunizes the company from further liability under the contested policy." *See Kelling*, 170 F. Supp. 2d at 794. The Court rejects, on these facts, the persuasiveness of this theory. Unthinking application of this exemption would lead to blanket insurance company ineligibility for fee awards, which is not the law. Rather, this theory, rightly

5

understood, targets potential fee awards that merely reimburse an insurance company for expenses normally incurred as part of a typical interpleader case or due to *its own litigation decisions*.[3] Union Security did not, in this case, incur the targeted fees concerning which it seeks reimbursement via the "self-serving interest" of "obtaining a court adjudication" in interpleader. *See W. Life Ins. Co. v. Nanney*, 290 F. Supp. 687, 688 (E.D. Tenn. 1968). Rather, Union Security incurred the fees due to the Hockensmiths' unusual, repetitive, and multiplicative litigation strategies. The Court would not, by denying Union Security an award here, advance a general desire to avoid reaping further benefit on an insurance company via a fee award, as the company simultaneously benefits via the protections of interpleader, when the Hockensmiths' affirmative actions—not the normal vicissitudes of litigating interpleader—particularly justify the award. These circumstances, in the Court's view, take the scenario outside the contemplation of *Kelling*'s second exemption.

Third, the policy argument that a fee award "would senselessly deplete the fund that is the subject of preservation through interpleader," *Kelling*, 170 F. Supp. 2d at 795, likewise carries little weight here. The Hockensmiths have been on notice since the day the case began that Union Security would be seeking "costs and expenses incurred in bringing this action, together with reasonable attorneys' fees." DE #1 (Complaint), at 7. Union Security did not shy from reminding the Hockensmiths of this at nearly every step of the case progression. *See, e.g.*, DE ##17-1, at 8 n.3 (Union Security notifying the

---

[3] Thus, Union Security appropriately eschewed seeking fees for a large portion of the work litigating this case, including its efforts to serve the foreign defendants (save for the reply the Hockensmiths forced it to file) and to secure default judgments against potential competing claimants. It invited those expenses via filing the case and as part of securing finality and the protections that interpleader provides.

Hockensmiths that it may "seek fees in connection with . . . defending [their] Counterclaims"); 18, at 8 n.4 (same); 27, at 9 n.2 (same); 28, at 2 n.1 (same); 31, at 5; 68, at 6 n.3 (Union Security notifying the Hockensmiths that it may seek "its fees incurred in responding to the Hockensmiths['] repeated pleadings and motions"); 70, at 2 n.2 (Union Security notifying the Hockensmiths that it may "seek its reasonable fees and costs that have been incurred in the defense of the Hockensmiths' litigation"); 90, at 2 (Union Security "anticipating seeking an award of fees and costs because the Hockensmith[s] unnecessarily multiplied this litigation through filing counterclaims and multiple motions to which Plaintiff was forced to respond").

Ms. (and Mr.) Hockensmith, nevertheless, made the described litigation choices and sustained a steady filing barrage. Consequences result. *See Ward v. Rawlake*, No. 2:14-cv-848, 2015 WL 4755206, at *2 (S.D. Ohio Aug. 10, 2015) (noting the propriety of considering "whether the interpleader-plaintiff warned the other parties that it would seek attorneys' fees"). The Court clarifies that it would not lightly or routinely, in a run-of-the-mill, or "entirely unremarkable," interpleader case, endorse depriving the proper beneficiary of roughly (but still less than) half of the interpleaded amount. *See Sun Life Assurance Co. v. Schindeldecker*, No. 3:15-543, 2016 WL 699151, at *4 (M.D. Tenn. Jan. 26, 2016). However, this "procedurally tangled" case, *see* DE #74, at 1, involving the intensity of docket activity excerpted and other complicating factors described, properly justifies a fee award to Union Security. The Court does not "senselessly" deplete the interpleaded fund when the diminution is a result of the beneficiary's deliberate litigation decisions and repeatedly rejected substantive positions.

At bottom, the decision is an equitable one. The Court, considering the totality, concludes that it should, on these facts, award Union Security a reasonable attorney fee. *See, e.g.*, *Holmes*, 148 F. App'x at 259 (affirming fee award when the stakeholder "had no choice" to incur fees based on claimants' litigation decisions and "was forced to incur attorneys' fees and costs in order to extricate itself from the litigation"); *Allstate Life Ins. Co. v. Shaw*, No. 15-11761, 2016 WL 1640461, at *6 (E.D. Mich. Apr. 26, 2016) (expressing conceptual agreement with awarding an insurer fees "associated with having to defend against Shaw's Counter-Complaint" in an interpleader context); *Life Ins. Co. of N. Am. v. Simpson*, No. 08-2446-STA, 2010 WL 3503961, at *2 (W.D. Tenn. Sept. 1, 2010) (awarding an insurance company attorney fees "related to the motion to dismiss" a claimant's counterclaim); *Life Ins. Co. of N. Am. v. Bond*, No. 1:11-cv-146, 2013 WL 12178133, at *8 (S.D. Ohio Feb. 5, 2013) (approving a fee award to "an innocent and otherwise disinterested stakeholder who has been required to expend time and money to participate in a dispute not of [its] own making," as the Hockensmiths here required Union Security); *Midland Nat'l Life Ins. Co. v. Blocker*, No. 1:11-CV-662, 2012 WL 3655287, at *2 (W.D. Mich. Aug. 23, 2012) (same); *Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1371-72 (N.D. Ga. 2008) (awarding insurer attorney fees incurred, in part, while "defending against the Trustee's counterclaim").

Union Security qualifies under the Sixth Circuit's standard, and none of the factors that intra-Circuit district courts consider in this context militate against an award, in these circumstances. Thus, the Court holds that Union Security "is entitled to" and should receive an award, *see Holmes*, 148 F. App'x at 259, vindicating the "general rule" under federal law, *see Kelling*, 170 F. Supp. 2d at 793.

Given these determinations, the Court finally must decide the proper amount. The Court, as *Holmes* demands, has assessed each of Union Security's requests for reasonableness. *See* 148 F. App'x at 259 ("The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate."). The Court accepts DE ##92-1 & 92-2 as describing and reflecting the actual time spent working on the involved (and targeted) issues (and confirmed such via entry-by-entry review). Likewise, the Court views the hours expended and rates charged, with but a few exceptions,[4] as reasonable in this context. Notably, the Hockensmiths relate no specific

---

[4] Specifically, the Court trims the following entries:

1. 7/10/17—Sarah E. Lintecum—the Court cuts this entry by two-thirds due to the substantial redaction regarding topics of research. The Court, due to the redaction, cannot tell what topic(s) this research related to. The Court, thus, reduces this entry from $1,209 to $403.
2. 7/12/17—Sarah E. Lintecum—the Court cuts this entry by one-third for the same reason. The Court reduces this entry from $663 to $442.
3. 8/24/17—Robyn L. Anderson—the Court cuts .5 hours from this entry for the same reason (applied to the referenced email). The Court reduces this entry from $1,500 to $1,375.
4. 7/25/18—Sarah E. Lintecum—the Court cuts this entry by half for the same reason. The Court reduces this entry from $1,501.50 to $750.75.
5. 8/15/18—Robyn L. Anderson—the Court cuts this entry by one-third for the same reason. The Court reduces this entry from $429 to $286.
6. 8/20/18—Sarah E. Lintecum—the Court cuts this entry by half for the same reason. The Court reduces this entry from $195 to $97.50.
7. 8/21/18—Robyn L. Anderson—the Court cuts this entry by half for the same reason. The Court reduces this entry from $66 to $33.

Subtracting the trimmed amounts from $20,534.50 results in a fee award of $18,358.25, a reasonable result on this record. *Kelling*'s theories—particularly theory three—also appropriately inform the Court's decision to carefully examine and reduce, even absent objection, the arguably questionable portions of these entries. *See also, e.g.*, *Unicare Life & Health Ins. Co. v. Foster*, No. 16-cv-11659, 2016 WL 9223845, at *2 (E.D. Mich. Sept. 22, 2016) (*sua sponte* reducing fee request from $2,500 to $1,100); *Columbus Life Ins. Co. v. Walker-Macklin*, No. 1:15-cv-535, 2016 WL 4007092, at *5 (S.D. Ohio July 25, 2016) (trimming fee request); *Monumental Life Ins. Co. v. Pittman*, No. 12-cv-12818,

objection[5] on these topics. *See generally* DE #94.[6] Accordingly, the Court, on full review and given the lack of particular objection, determines that an award of $18,358.25 is justified and reasonable.[7]

Per this analysis, the Court substantially **GRANTS** DE #92 and **AWARDS** Union Security $18,358.25 as a reasonable attorney fee. The Court will enter a separate Judgment.

This the 4th day of February, 2019.



Signed By:
*Robert E. Wier*
United States District Judge

---

2013 WL 12180826, at *3 (E.D. Mich. Oct. 1, 2013) (*sua sponte* cutting fee request to an amount the court "deem[ed] . . . more equitable").

[5] The Hockensmiths' footnoted bellyaching about Ms. Anderson's pay rate merely observes the (unremarkable) fact of an increase over time. *See* DE #94, at 3 n.3. The Hockensmiths challenge nothing specific about Ms. Anderson's charged rate(s).

[6] The Court denies the Hockensmiths' inexplicable request for yet another "opportunity to properly and fully challenge the reasonableness of the charges and the rates claimed by Union Security." DE #94, at 6. The response to the motion for fees *was* the Hockensmiths' opportunity to make such a challenge. *See* LR 7.1(c). They were well aware that litigating the motion was the final step in the case before entry "of final Judgment." *See* DE #91, at ¶ 6. The Hockensmiths provide no reason they could not have disputed the reasonableness of the charges and rates in DE #94 (which they filed over a week in advance of the applicable deadline), and they cite no law in support of the nebulous entreaty for additional briefing. The Court rightly denies such a cursory, unsupported request. *See, e.g.*, *Perini/Tompkins Joint Venture v. Comerica Bank*, No. 12-10234, 2014 WL 6809810, at *2 (E.D. Mich. Dec. 2, 2014) (denying "additional briefing" when "Defendant had an opportunity to fully address the issue prior to the Court" resolving it); *cf. LeBoyer v. Greenspan*, No. CV 03-5603-GHK (JTLx), 2007 WL 4287646, at *5 (C.D. Cal. June 13, 2007) (granting additional briefing only because "the parties have not had an opportunity to address these issues").

[7] This is less than half of the interpleaded amount, $41,361.62. *See* DE #21. It is also—meaningfully, to the Court, and consistent with a proper fee theory in a case of this type—but a fraction of the total amount of attorney fees Union Security reported incurring in this case, $71,858.11. *See* DE #92-1, at ¶ 4.